IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DONALD D. DANFORD,**

    Plaintiff,

    v.                      Case No. 2:10-CV-124
                           Judge Marbley
**STATE OF OHIO DEPARTMENT**      Magistrate Judge King
**OF REHABILITATION AND**
**CORRECTIONS,** *et al.,*

    Defendants.

## ORDER AND REPORT AND RECOMMENDATION

This is a civil rights action under 42 U.S.C. §1983 in which plaintiff, who is incarcerated at Noble Correctional Institution ("NCI"), alleges that he was subjected to deliberate indifference to his serious medical needs in contravention of his rights under the Eighth and Fourteenth Amendments to the United States Constitution when he was denied medical care in connection with the August 2009 fracture of his right ankle. *Complaint*, Doc. No. 4, p.5. Remaining defendants are Warden Banks of NCI and V. Sawyer, Health Care Administrator of NCI {hereafter "the State defendants"], and Wexford Health Sources and Sarah Seeburger, Health Services Administrator for NCI [hereinafter "the Wexford defendants"]. This is matter is now before the Court on *Defendants' Wexford Health Sources, Inc. and Sarah Seeburger's Motion for Summary Judgment*, Doc. No. 90 ("*Wexford Defendants' Motion for Summary Judgment*"); *Defendants Banks and Sawyers' Motion for Summary Judgment*, Doc. No. 91 ("*Banks and Sawyer Motion for Summary Judgment*"), as well as on a number of motions filed by plaintiff: Doc. Nos. 85, 89, 93, 94, 96, 104, 107, and 112. The Court will first address plaintiff's motions.

**I.    PLAINTIFF'S MOTIONS**

Throughout the litigation, plaintiff has persisted in his requests for the appointment of counsel. He explains that counsel is necessary to conduct depositions and to retain the services of an expert.[1] However, plaintiff does not identify those persons whose deposition testimony is necessary to the resolution of the case, and it is not apparent to the Court that such testimony is in fact necessary. Furthermore, plaintiff has not articulated the information sought to be adduced on deposition nor has he explained why such information is necessary to the resolution of the issues presented in this action. Moreover, defendants' motions for summary judgment are based on plaintiff's medical records, which have been produced to plaintiff and upon which plaintiff also relies in making substantive response to those motions for summary judgment.[2] Therefore, it does not appear that the services of an outside expert is necessary to the resolution of plaintiff's claims. Finally, plaintiff, although *pro se*, has vigorously pursued his claims in this action. Under these circumstances, this Court concludes that the appointment of counsel for plaintiff is not necessary to the full presentation of his claims. Plaintiff's most recent motions for the appointment of counsel, Doc. Nos. 89, 107, are therefore **DENIED**.

Plaintiff has also repeatedly moved to compel additional discovery. Currently, plaintiff asks that defendants be required to produce the

---

[1] Plaintiff's earlier motions for the appointment of counsel were also predicated on the refusal of the Wexford defendants to produce copies of plaintiff's medical records to anyone other than counsel for plaintiff. However, the State defendants have produced plaintiff's medical records directly to plaintiff and plaintiff has made substantive response to the motions for summary judgment.

[2] The Wexford defendants have proffered the *Affidavit of Thomas Murray, M.D.,* in support of their motion for summary judgment. Exhibit B, attached to *Defendants' Wexford Health Sources, Inc. and Sarah Seeburger's Motion for Summary Judgment*. The Court concludes that consideration of this affidavit is unnecessary to the resolution of that motion and has not considered that affidavit.

actual x-rays of his ankle as well as the medical records of another inmate who allegedly suffered a similar injury but whose outcome, plaintiff believes, was better than was plaintiff's. Doc. Nos. 85, 112. All parties, including plaintiff, have referred to plaintiff's medical records in connection with defendants' motions for summary judgment. It is not apparent to the Court that review of plaintiff's actual x-rays is necessary to the resolution of the issues presented in this case. Moreover, the medical records of another inmate are simply irrelevant to whether the named defendants were deliberately indifferent to plaintiff's medical needs. Accordingly, plaintiff's motions to compel, Doc. Nos. 85, 112, are **DENIED**.

Finally, plaintiff has filed a number of motions seeking to strike filings by the defendants. Doc. Nos. 93, 94, 96, 104. He moves to strike the *Wexford Defendants' Motion for Summary Judgment* on the grounds that it was not timely filed and that plaintiff did not receive a copy of the motion in timely fashion. Doc. Nos. 93, 94, 96. The *Wexford Defendants' Motion for Summary Judgment*, Doc. No. 90, was in fact timely filed, and plaintiff has now received a copy of motion, as evidenced by his substantive response to the motion, Doc. No. 100. Under these circumstances, plaintiff's motions to strike the *Wexford Defendants' Motion for Summary Judgment*, Doc. Nos. 93, 94, 96, 104, are **DENIED.**

Plaintiff has also moved to strike the reply filed in support of the State defendants' motion for summary judgment, arguing that the Federal Rules of Civil Procedure do not authorize the filing of a reply in response to an answer. However, plaintiff's response to the State defendants' motion for summary judgment, Doc. No. 97, is not an answer within the meaning of Fed. R. Civ. P. 7(a). Moreover, the local rules of this Court, S.D. Ohio R. 7.2(a)(2), expressly authorize the filing of

a reply memorandum.  Plaintiff's m6tion to strike the reply in support of the *Defendants Banks and Sawyers' Motion for Summary Judgment*, Doc. No. 104, is therefore **DENIED**.

II.   **MOTIONS FOR SUMMARY JUDGMENT**

   A.  **Factual Background**

After plaintiff slipped and broke his ankle at NCI on August 29, 2009, he was stabilized at NCI and then transported to the emergency department at Marietta Memorial Hospital, where x-rays were taken. *Complaint*, p.5; *Affidavit of Vanessa Sawyer*, ¶ 6, attached as *Exhibit A* to *Banks and Sawyer Motion for Summary Judgment*.[3]  The dislocation was reduced and plaintiff's ankle was placed in a splint. *Id.*, ¶ 7; *Exhibit C* to *Banks and Sawyer Motion for Summary Judgment*.  Plaintiff was provided pain medication and was directed to consult with an orthopedic specialist, with the notation "will need surgery." Exhibit C, attached to *Banks and Sawyer Motion for Summary Judgment.* Plaintiff was returned to NCI, where he was admitted to Inmate Health Services and where his medical records indicate that a referral to an orthopedic specialist should be made "ASAP." *Exhibits E, F,* attached to *Banks and Sawyer Motion for Summary Judgment*. On September 8, 2009, Mohammad Al-Quaimi, M.D., an orthopedic specialist, examined plaintiff and scheduled open reduction internal fixation surgery for September 11, 2009. *Exhibits H, I,* attached to *Banks and Sawyer Motion for Summary Judgment*; *see also Complaint*, p.6.  Prison clinical notes indicate that, while awaiting surgery, plaintiff was provided pain medication.  *Id.* Plaintiff was returned to NCI on September 12, 2009. *Exhibit J,* attached to *Banks and Sawyer Motion for Summary Judgment;*

---

   [3]Although both motions for summary judgment include plaintiff's medical records, for ease of reference the Court will refer only to the exhibits attached to the *Banks and Sawyer Motion for Summary Judgment*.

*see also Complaint*, p.6.  Dr. Al-Quaimi's operative notes indicate, "I will see him in the office in 2 weeks." *Id.*  Notes from NCI indicate that, upon his return, plaintiff was instructed to keep his leg elevated, was prescribed Ultram, 50 mg., and was instructed "[t]o notify staff if pain not eased." *Exhibit K*, attached to *Banks and Sawyer Motion for Summary Judgment.*

Plaintiff was transported to Dr. Al-Quaimi's office on October 1, 2009. *Exhibits L, M*, attached to *Banks and Sawyer Motion for Summary Judgment*.  Clinical notes indicate that the "stitches" were to be left in place until Dr. Al- Quiami next saw plaintiff on October 6, 2009. *Exhibit M*, attached to *Banks and Sawyer Motion for Summary Judgment*.  On that date, Dr. AlQuaimi removed plaintiff's staples, commented that plaintiff was "healing well," and indicated that plaintiff was weight-bearing as tolerated and should use crutches for 6 weeks.  *Exhibit L*, attached to *Banks and Sawyer Motion for Summary Judgment*; *see also Complaint*, pp. 6-7 (indicating that the doctor instructed him to "put[] pressure on that foot[] 'as much as [he] can stand'").  Nursing notes indicate that plaintiff was using crutches without difficulty.  *Exhibit M*, attached to *Banks and Sawyer Motion for Summary Judgment*. Plaintiff reported only mild pain and stiffness. *Id*.  Plaintiff underwent a follow-up appointment with Dr. Al-Quaimi on November 17, 2009.  *Exhibit N,* attached to *Banks and Sawyer Motion for Summary Judgment*.  At that point, his crutches were discontinued, he was directed to use Ibuprofen for pain as needed and was told to return should his pain worsen or should he have any concerns.    *Id.*

On December 15, 2009, plaintiff indicated that he "want[ed] low bunk, low range restriction lifted that was ordered for ankle injury/surgery." *Exhibit O,* attached to *Banks and Sawyer Motion for*

5

*Summary Judgment.* Plaintiff indicated that he "want[ed] to transfer to another institution where he can work outside the fence and the restriction is interfering with this." *Id*. He "report[ed] [his] ankle is healed" and "fine;" he "denie[d] pain" and indicated that he has "been doing squats and lunges and everything," and was "very angry and emphatic that he doesn't want to see the [doctor]." *Id.*

However, progress notes dated January 6, 2010, indicate that plaintiff intended to sue "due to length of time between ER & ankle surgery, and f/u appt not being timely." *Exhibit N,* attached to *Banks and Sawyer Motion for Summary Judgment*.

Plaintiff executed the *Complaint* on January 30, 2010. *Complaint*, p. 8.

### B. Standard

Summary judgment is appropriate if the record establishes that there is no genuine issue of material fact. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). If the party moving for summary judgment supports his motion as required by Fed. R. Civ. P. 56©, the non-moving party "may not rely on his pleadings alone." *Arnett v. Myers*, 281 F.3d 552, 559 (6th Cir. 2002). Instead, the non-moving party, like the party moving for summary judgment, must support his factual assertions by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The mere existence of a scintilla of evidence in support of [the opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 251; *see also Celotex Corp.*

*v. Catrett*, 477 U.S. 317 (1986).

The Eighth Amendment guarantees prisoners "a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006). A failure to provide medical care amounts to an Eighth Amendment violation only if it is equivalent to "cruel and unusual punishment." *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994). Prison officials will be held liable for a denial of medical care of constitutional proportions if they "are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Id.*

The deliberate indifference standard includes both objective and subjective components. An official's deliberate indifference will give rise to a constitutional violation if (1) "the medical need at issue is sufficiently serious," [*i.e.*, the objective component] and if (2) the official "subjectively perceived facts from which to infer substantial risk to the prisoner, [ ] he did in fact draw the inference, and [ ] he then disregarded that risk" [*i.e.*, the subjective component]. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (internal quotation marks omitted).

The Constitution does not, however, prohibit medical malpractice within the prison context. *Id.; Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3d Cir. 1976). Moreover, a mere dispute over the course of medical treatment is not actionable under §1983. *Young v. Gray*, 560 F.2d 201 (5th Cir. 1977).

**C. Discussion**

Plaintiff's claims in this action rely on several allegations. He complains that defendants delayed the initial surgery and the removal of surgical staples in the area of the wound. *Complaint*, p.6. Plaintiff also complains that, after the removal of his staples, he received "[n]o rehabilitation or further treatment due to the incompetence and practices of the NCI/Wexford personnel." *Id.*, p.7. Plaintiff also suggests that he did not receive a wheelchair, that he was returned to regular housing too early and that he was improperly returned to work. *Id.*, p.6. Finally, plaintiff suggests that, during an "[e]xtremely painful period" following surgery, he was given only "one Ultram" three times a day. *Id.*

The uncontroverted evidence establishes that none of the named defendants was deliberately indifferent to plaintiff's serious medical needs. He was treated within the prison promptly after suffering his injury, he was transported to an outside emergency room and underwent treatment, including surgery, by an orthopedic specialist who commented that, after removing plaintiff's staples, that plaintiff was "healing well."  After yet another follow-up appointment on November 17, 2009, the orthopedic specialist apparently saw no need for further specialized treatment.  The records nowhere suggest that a wheelchair or physical therapy was prescribed for plaintiff.

The fact that surgery may not have been scheduled as quickly as plaintiff would have liked does not alone give rise to a constitutional violation; prisoners and non-prisoners alike are commonly confronted with the difficult schedules of medical

8

specialists.  The evidence indicates that prison officials transported plaintiff to Dr. Al-Quaimi on October 1, 2009 for removal of the staples.  There is no evidence to suggest that the fact that Dr. Al-Quaimi did not actually remove the staples until October 6, 2009 is attributable to defendants or that this delay in the removal of plaintiff's staples caused plaintiff harm.

In his unverified *Complaint*, plaintiff suggests that he suffered unnecessary pain and suffering throughout this process.  *Id.*, p.6.  He also suggests that he incurred "longterm damage and harm from the original accident and their malpractice and indifference" and that he "still experience[s] pain regularly in that entire lower leg."  *Id.*, p.7.[4]  *See also Plaintiff's Submission of Available Discovery with Stated Proof of Claims and Request for the Appointment of Counsel*, Doc. No. 67; *Plaintiff's Rebuttal/Reply to Defendants Banks and Sawyer Motion for Summary Judgment*, Doc. No. 97; *Plaintiff's Rebuttal to Defendants Banks and Sawyer Memorandum in Opposition, Document #98, Filed 7/18/11*, Doc. No. 103.  In the absence of evidence of deliberate indifference on the part of any of the defendants, however, plaintiff cannot prevail on his constitutional claims.

**WHEREUPON** plaintiff's motions, Doc. Nos. 85, 89, 93, 94, 96, 104, 107, 112, are **DENIED.**

It is **RECOMMENDED** that the *Wexford Motion for Summary Judgment*, Doc. No. 90, and the *Banks and Sawyer Motion for Summary Judgment,* Doc. No. 91, be **GRANTED**.

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file

---

[4] The Court notes that plaintiff's *Complaint* is unverified, as are his responses to defendants' motions for summary judgment.  *See* Doc. Nos. 97, 100.

and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

    The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


**February 13, 2012**        *s/ Norah McCann King*
**DATE**                     **NORAH McCANN KING**
                             **UNITED STATES MAGISTRATE JUDGE**